**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| AMY SERSANTE, an individual ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv03079-NYW |
| ) | |
| IDEAL IMAGE GROUP OF COLORADO, ) | |
| PLLC, a Colorado limited liability company, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant Ideal Image Group of Colorado, PLLC ("Ideal Image" or "Defendant"), by and through its undersigned attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby submits this Motion to Dismiss and Compel Arbitration (the "Motion"). Plaintiff Amy Sersante ("Plaintiff") signed a valid and enforceable arbitration agreement with Ideal Image covering her claims asserted herein, yet has filed and refused to dismiss this lawsuit, all in violation of her arbitration agreement. Therefore, Ideal Image has been forced to seek an order from the Court compelling Plaintiff's claims to binding arbitration. In support of this Motion, Ideal Image states as follows:

### I.     FACTUAL BACKGROUND

When an applicant signs an offer of employment with Ideal Image and establishes a start date, Ideal Image's Human Resources Coordinator initiates the New Hire Onboarding Process in the UltiPro Human Resource Information System ("HRIS"). (*See* Exhibit A, Declaration of Annette Green ("Decl.") at ¶ 5.) The applicant receives an email from Human Resources with an onboarding link to UltiPro, and must complete and either acknowledge or sign (as appropriate) the required New Hire documents—which include an Employment Dispute

1

Resolution and Arbitration Agreement (the "Agreement"). (*See id.* ¶ 6.) The applicant also receives other New Hire documents that require their signature before they begin their employment with Ideal Image. (*Id.* ¶ 7.) Ideal Image requires every applicant to sign all such onboarding documents—including the Agreement—before his or her first day of employment with Ideal Image. (*Id.* ¶ 8.)

Ideal Image followed this process with respect to Plaintiff. Plaintiff applied for a job, as a nurse in Defendant's Englewood, Colorado location in January 2015. (Complaint, Dkt. # 1 at ¶¶ 4, 18). On February 27, 2015, Ideal Image offered Plaintiff the job and e-mailed her the UltiPro onboarding links, and required New Hire Documents—including the Agreement—per Ideal Image's normal practice. Plaintiff signed the Agreement on March 2, 2015, prior to her first day of work on March 23, 2015. (*See* Ex. B, Arbitration Agreement.)

Under the Agreement, Plaintiff agreed that, "all disputes that arose or may, in the future, arise from Employee's employment with the Company or the termination of Employee's employment with the Company must . . . be submitted for final and binding arbitration before the American Arbitration Association." (*Id.* at ¶ 2.) The Agreement repeatedly specifies that it is intended to cover all employment claims that can be compelled to arbitration, stating in clear terms:

- "[T]he Company Group[1] and Employee have entered into this Agreement to arbitrate claims[.]" (*Id.* at ¶ 2.)

- "Employee understands that, by accepting and/or continuing employment with the Company, and executing this Agreement, Employee is waiving the right to seek remedies in court, including the right to a jury trial . . . and that arbitration strictly in accordance with this Agreement is his or her exclusive remedy." (*Id.* at ¶ 13.)

- And finally, in bold and capital letters on the signature page, the Agreement proclaims:

---

[1] Defendant is specifically included in the Agreement's definition of "Company Group." (*See* Ex. B at Appendix A).

> "EMPLOYEE UNDERSTANDS AND ACKNOWLEDGES THAT, BY SIGNING THIS AGREEMENT, BOTH PARTIES HAVE KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVED ANY RIGHT EITHER MAY HAVE TO . . . A TRIAL BY COURT OR JURY AS SET FORTH IN THIS AGREEMENT." (*See id*. at p. 5.) (Emphasis in original.)

The Agreement also specifies that claims related to employment and termination are covered:

> The Company Group and Employee will resolve, by arbitration, all statutory, contractual, and/or common law claims or controversies that the Company Group may have against the Employee or that the Employee may have against the Company Group . . . . To the fullest extent permitted by law, covered Claims subject to arbitration shall include, but not be limited to . . . **Claims for discrimination or harassment, including but not limited to those based upon . . . sex . . . disability . . . pregnancy** . . . or any classification protected by law, or **retaliation** . . . claims for violation of any federal, state, or other governmental law . . . claims for wrongful discharge . . . Any other claim Employee may have against company or Company Group not excluded [by the Agreement].

(*Id*. at ¶ 5.) (Emphasis added.)

The Agreement also makes this mandatory arbitration final and binding, stating "[t]he parties agree that the award of the arbitrator with respect to the Covered Claim shall be final and binding on both parties…. The award may be vacated or modified only on the grounds specified in the Federal Arbitration Act or as allowed under Florida law." (*Id*. at ¶ 10.)

Despite her clear assent to the Agreement and obligation to submit claims against Ideal Image to arbitration, Plaintiff filed the present suit on October 28, 2019, alleging claims for pregnancy discrimination and retaliation, failure to accommodate her pregnancy and related disability, and pregnancy/sexual harassment. (Dkt. # 1.) Her claims clearly fall under the Agreement and must be compelled to arbitration.

## II. CONFERRAL STATEMENT PERSUANT TO CIV. PRAC. STANDARDS § 7.1

The undersigned first conferred with Plaintiff's counsel regarding the relief requested herein on February 21, 2020. In response, opposing counsel stated on February 28 they required additional time to decide their position on arbitration, but proposed mediating the case "in the

3

meantime," believing it to be the "most effective and efficient way to deal with Mrs. Sersante's claims in terms of both time and money." (Ex. C, February 28, 2020 email.) The undersigned asked Plaintiff's attorneys again on March 4 and March 6 for their position on arbitration. (*See* Exs. C and D, March 4 and 6, 2020 emails.) On March 6, Plaintiff's attorney urged Defendant to submit to mediation "prior to agreeing and/or disputing the issue of arbitration." (Ex. E, March 6, 2020 email.) Defendant agreed to mediate the matter, informing Plaintiff's counsel that Defendant would not waive any of its arguments regarding arbitrating this matter, including arguments with respect to waiver and the timing of this Motion. (*See id*.) Because of the COVID-19 pandemic and shutdown of Defendant's locations nationwide, the parties had to delay mediation until July 20, 2020.

Mediation was brief and unsuccessful. The undersigned attempted to confer again on July 20 and July 21. (*See* Ex. F, July 20-21 emails.) Plaintiff's attorney informed the undersigned on July 22 that Plaintiff would contest the arbitration of this dispute. (*See id*.) When the undersigned attempted to engage in a meaningful conferral and inquired about the reasons supporting Plaintiff's position, Plaintiff's attorney replied, "We know the Rule 7.1 standards. We have met the requirements. We are [under] no obligation to explain our arguments in response to a motion which has not been filed." (*See id*.) The undersigned thus attempted to ascertain the nonmoving party's position pursuant to this Court's Practice Standards but was unsuccessful.

### III.   LEGAL ARGUMENT

Plaintiff's claims cannot proceed in this Court because they are subject to final and binding arbitration. The Agreement is enforceable under applicable federal law because the Agreement involves interstate commerce and constitutes a valid contract under state law. Further, under the Agreement, the issue of arbitrability is to be decided by the arbitrator. In addition, federal policy

4

dictates that any doubts concerning arbitrability are to be resolved in favor of arbitration. Lastly, Defendant has not waived any arguments related to enforcing the Agreement. Therefore, the Court should dismiss Plaintiff's Complaint with prejudice and compel her to submit her claims to arbitration.

### A. The Arbitration Agreement is Enforceable under Federal and State Law.

1. <u>Arbitration Agreements are Universally Favored</u>.

Federal law strongly favors arbitration. *BOSC, Inc. v. Board of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017). The FAA and its interpretive case law embody a pro arbitration policy. *See, e.g., Sanchez v. Nitro-Life Technologies, LLC*, 762 F.3d 1139, 1146 (10th Cir. 2014) (holding FLSA wage claims fell within the scope of the arbitration clause and recognizing "the FAA and common law have created a presumption in favor of arbitration"); *Bechtold v. Santander Consumer USA, Inc.*, Case No. 15–CV–00909–RPM, 2015 WL 5455617, at *1 (D. Colo. July 30, 2015 (Matsch, J.)) ("The provisions of the Federal Arbitration Act manifest a liberal federal policy favoring arbitration.") (internal quotations omitted). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration, and Plaintiff bears "the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (explaining prior holdings that the party resisting arbitration bears the burden of proving the claims should not be arbitrated).

Section 2 of the FAA articulates the Federal policy in favor of arbitration:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

5

*See* 9 U.S.C. § 2.  The provisions of the FAA are mandatory, and a court must compel arbitration when a valid agreement exists.  *Id*. at §3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had []"); *see also id.* at § 4; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 108 (2001) (finding aside from a narrow class of workers, the FAA covers all contracts of employment and the Act may be used to compel arbitration of employment-related claims).

      2.  <u>The Agreement is Valid and Enforceable under the FAA</u>.

Parties are generally free to structure arbitration under the FAA as they see fit and "specify by contract the rules under which that arbitration will be conducted."  *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 57 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989)).  Because Plaintiff agreed to the Agreement's enforcement under the FAA at the time she entered the Agreement, the FAA should apply.  (*See* Ex. B at § 11.) ("The award may be vacated or modified only on the grounds specified in the Federal Arbitration Act[.]").  In addition, the Agreement meets the FAA's requirements for enforceability under the statute because the arbitration provisions are (1) part of a contract or transaction involving interstate commerce, and (2) valid under general principles of contract law. *See* 9 U.S.C. §§ 1-2.

      a.  *The Agreement Involves Interstate Commerce*.

The interstate commerce analysis is not a rigorous inquiry.  In fact, a court in this District explained "the interstate commerce hurdle under the FAA is extremely low.  **Almost anything will do**."  *In re Touchstone Home Health LLC*, 572 B.R. 255, 268 (Bankr. D. Colo. 2017)

(emphasis added). The Court further stated, "a contract needs only the slightest nexus to interstate commerce to apply the FAA" and these requirements are met "where contractual activity facilitates or affects interstate commerce even tangentially, or where a contract is in any way connected to interstate commerce." *Id.* (Citation omitted). In the instant case, Defendant operates in at least 30 states. (*See* Ex. G. at Appendix A). Defendant also advertises in broadcast, internet, and print advertisements in dozens of states. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 243 (1964) (emphasizing significance of national advertising). In addition, Defendant receives goods from out-of-state vendors and provides cosmetic medical products to guests that it procures from other states. These are all activities that involve and affect commerce. Defendant's business therefore easily meets this first FAA requirement. *See Pope v. Integrated Assocs. of Denver, Inc.*, No. 16-CV-2588-JLK, 2017 WL 4857407, at *2 (D. Colo. Apr. 21, 2017) (holding that a multi-state operation was an interstate operation for the purposes of the first FAA requirement).

      b.     *The Agreement is an Enforceable Contract under Applicable State Law.*

To meet the second FAA requirement, the agreement to arbitrate must be an enforceable contract. An agreement's validity is determined by reference to general principles of contract law. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 685 (1996) ("'[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'") (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)) (Emphasis and alteration in original); *see also Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 777 (10th Cir. 2010) ("Whether there is an enforceable contract to arbitrate is a matter of contract law to be decided by the court. State law governs.") (Internal citations omitted). In interpreting the state law, courts should keep in mind the FAA's policies favoring arbitration. *See*

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc*., 13 F.3d 330, 334 (10th Cir. 1993) ("The effect of [section 2 of the Federal Arbitration Act] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

Because the parties agreed that Florida law governs the Agreement, the Court should apply Florida contract principles. (*See* Ex. B, ¶ 18.) *See U.S. ex rel. Mitchell Acoustics & Drywall, Inc. v. GSC Const., Inc*., No. CIV-15-293-R, 2015 WL 3891885, at *1 (W.D. Okla. June 24, 2015) ("choice-of-law provisions applying a particular state's procedural rules on arbitration are generally enforceable"). Like Federal law, Florida law also favors the resolution of conflicts through arbitration when the parties agreed by contract to arbitrate disputes. *See Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 497 (Fla. Dist. Ct. App. 2015) (explaining, "arbitration is a favored means of dispute resolution"); *accord Roe v. Amica Mutual Ins. Co*., 533 So. 2d 279, 281 (Fla. 1988) ("Under Florida law . . . arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award").

Under Florida law, the elements of an enforceable contract are: "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *West Const., Inc. v. Florida Blacktop, Inc*., 88 So.3d 301, 304 (Fla. 4th DCA 2012). Here, the Agreement contains all the elements of a valid, enforceable contract. Defendant offered the Agreement to Plaintiff as a condition of her employment and she signed it; this is sufficient to satisfy the first two elements of an enforceable contract. *See Jones v. Sallie Mae, Inc*., No. 3:13–cv–837–J–99MMH–MCR, 2013 WL 6283483, at *5 (M.D. Fla. 2013) (applying Florida law and explaining that as to <u>acceptance</u>, signing a document indicates assent to the terms of an agreement.) The fact that only Plaintiff signed the agreement is not fatal to Defendant's argument and does not

change the analysis here; no signature is required to make an offer. *See Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 660 (Fla. Dist. Ct. App. 2008) (explaining that Florida does not require an arbitration agreement to be signed to be enforceable). Further, an employer's continued employment of an at-will employee constitutes consideration to support an arbitration agreement. *See Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 2:10–cv–233–FtM–29DNF, 2011 WL 1230734, at *4 (M.D. Fla. 2011) ("In this case, the [employer] was under no pre-existing duty to continue plaintiff's employment, as plaintiff was employed on an "at-will" basis."). And the terms are sufficiently specific that the parties agreed to arbitrate their disputes.

Finally, the Agreement is sufficiently clear so that both parties can ascertain their obligations to arbitrate. "The terms [of an arbitration agreement] must be definite enough so that the parties have some idea as to *what* matters are to be arbitrated and provide some procedure by which arbitration is to be effected." *Greenbrook NH, LLC v. Estate of Sayre, ex rel. Raymond*, 150 So. 3d 878, 881 (Fla. 2d DCA 2014) (emphasis added). Here, the Arbitration Agreement clearly covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims and time period covered, and the rights retained by the parties. Therefore, the Agreement between Plaintiff and Defendant satisfies each element of a valid contract under Florida law. Accordingly, the Agreement is valid under Florida contract law, and the second element of the Agreement's enforceability is satisfied.

As developed herein, the Agreement is valid and arbitration is therefore an appropriate forum for this dispute.[2]

---

[2] In light of Plaintiff's counsel's refusal to explain his opposition to the Motion, Ideal Image does not presently know whether there exists a dispute as to the validity of the Agreement. If indeed there is, and if the Court does not dismiss this case, it should transfer the case to the United States District Court for the Middle District of Florida pursuant to Paragraph 18 of the Agreement, which states "[i]n the event of any dispute related to the validity of this Agreement, the parties hereby consent to the exclusive jurisdiction of the courts of the State of Florida and the Federal courts of the United States of America located in the Middle District of Florida[.]" (Ex. B ¶ 18.) Because the parties intended to make jurisdiction and venue exclusive to Florida courts, this clause is enforceable. *K & V*

## B. The Arbitrator, Not the Court, Should Decide Issues of Arbitrability, but Plaintiff's Claims are Arbitrable.

Where there is unmistakable and clear evidence that the parties intended to submit the question of arbitrability to the arbitrator and not a court, the arbitrator must decide this issue. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1290 (10th Cir. 2017) (agreeing with other circuits that "a finding of clear and unmistakable intent to arbitrate arbitrability—which may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration— obliges a court to decline to reach the merits of an arbitrability dispute regarding the substantive claims at issue."); *Bank of Am., N.A. v. Beverly*, 183 So. 3d 1099, 1101 (Fla. Dist. Ct. App. 2015) ("Where the agreement 'clearly and unmistakably' provides for the arbitrator to determine the issue of arbitrability of a dispute, courts should enforce the agreement as written.") (Citation omitted).[3]

Here, the Agreement states "[t]o the fullest extent permitted by law, covered Claims subject to arbitration shall include, but not be limited to, the following . . . [a]ny dispute concerning the arbitrability of any such controversy or claim[.]" (Ex. B at § 5(vi)). This evidences a clear and unmistakable intent to submit the issue of arbitrability to the arbitrator. Thus, because all parties agreed, the Court should honor the parties' Agreement and "decline to reach the merits of the arbitrability dispute." *Belnap*, 844 F.3d at 1290.

However, if the Court disagrees and believes it should evaluate the issue of arbitrability, it should find that Plaintiff's Claims all fall within the Agreement's scope. The question whether a dispute is within the scope of arbitration is a matter of contract interpretation. *See O'Keefe*

---

*Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft* ("BMW"), 314 F.3d 494, 499 (10th Cir. 2002) (citation omitted).
[3] Because Florida and the Tenth Circuit both require the Court to decline ruling on the issue of arbitrability, the Court need not conduct a choice of law analysis on this point.

10

*Architects, Inc. v. CED Constr. Partners, Ltd.,* 944 So.2d 181, 183 (Fla. 2006). Courts must look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration of a particular dispute. *See id.* at 185. Doubts concerning the scope of arbitration agreements should be resolved in favor of arbitration on all issues related to the contract. *See id.*

Here, Plaintiff's Claims easily fall within the scope of the Agreement. The Agreement specifically provides that all employment claims, including "for discrimination or harassment, including but not limited to those based upon . . . sex . . . disability . . . pregnancy . . . or any classification protected by law, or retaliation" must be arbitrated. (Ex. B at § 5(i).) Plaintiff's Claims for pregnancy discrimination and retaliation, failure to accommodate her pregnancy and related disability, and pregnancy/sexual harassment are therefore precisely the types of claims contemplated by the Agreement. (Dkt. # 1.) Because the parties agreed, Plaintiff must submit her claims to arbitration.

### C. Defendant's Right to Enforce the Agreement has not been Waived

As an initial matter, Ideal Image does not even know whether Plaintiff claims it has somehow waived the right to enforce the Agreement, as Plaintiff's counsel has refused to explain its opposition to the Agreement's enforcement. However, to the extent Plaintiff does so contend, such an argument is not sustainable.

Federal courts have consistently held that federal law determines whether a party has waived the right to arbitrate. *See Blanco v. Sterling Jewelers Inc.,* Civil Action No. 09-cv-01330-CMA-KLM, 2010 WL 466760, at *4 (D. Colo. Feb. 9, 2010) ("Whether waiver has occurred is a question of federal law.") (collecting cases). In making this determination, courts typically evaluate the following factors: (1) whether the party seeking to arbitrate took actions inconsistent

with its right to arbitrate; (2) the extent to which the moving party substantially invoked the litigation machinery; (3) the length of the delay before requesting arbitration and nearness to trial; (4) the claims the movant filed before requesting arbitration; (5) whether important intervening steps had taken place; and (6) whether the delay affected, misled, or prejudiced the nonmoving party. *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988); *see also BOSC, Inc.*, 853 F.3d at 1174. However, this list of factors does not require a mechanical process, nor is the list exclusive. *See Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010).

Here, each factor weighs against waiver. Defendant has not taken actions inconsistent with its intent to arbitrate; rather, it has been actively seeking to arbitrate this matter for many months. When Defendant first contacted Plaintiff to confer on this Motion in February 2020, the parties had not engaged in any discovery or taken any affirmative steps in litigating this matter other than issuing initial disclosures and attending a scheduling conference. Defendant also has not filed any counterclaims, motions, or otherwise sought relief from the Court. Defendant has therefore not substantially invoked the litigation system. *See Hill*, 603 F.3d at 766 (holding that no waiver occurred when a party demanded arbitration four months after answering a complaint, the court had entered a scheduling order, the parties had issued initial disclosures, and the nonmoving party had issued discovery that the moving party had not yet answered because "very little" had happened in the case).

In February 2020, Plaintiff's counsel refused to provide his position regarding arbitration and urged Defendant to mediate. Defendant's counsel made clear Defendant would not waive any arguments related to arbitration, but would engage in good faith mediation. (*See* Ex. E.) Had the parties not planned to mediate, Defendant would have filed this Motion in February 2020. Instead, the parties mediated on July 20, 2020 (following an unavoidable COVID-19-involved delay), and

Defendant is filing this Motion just over one week later.  Trial is not set yet in this case.  There was thus no delay because of Defendant's efforts or any intervening events that weigh in favor of waiver. Plaintiff also cannot claim any prejudice from the timing of Defendant's Motion, as she has not actively litigated this case in the past six months due to her desire to mediate the case and has been on notice since February of Defendant's intent to seek arbitration.  Thus, Defendant has not waived its right to arbitrate this matter.

In sum, the Court should grant Defendant's Motion to Dismiss and Compel Arbitration and dismiss this case with prejudice.

## IV.    CONCLUSION

Defendant respectfully requests the Court dismiss this case because the parties have a valid, binding, and enforceable agreement to arbitrate Plaintiff's claims.

Respectfully submitted this 31st day of July, 2020.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

  */s/Abigail S. Wallach*  
Michael H. Bell
Abigail S. Wallach
2000 South Colorado Boulevard
Tower 3, Suite 900
Denver, CO 80222
Telephone:  303.764.6800
Facsimile:    303.831.9246
michael.bell@ogletree.com
abbey.wallach@ogletree.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2020, I electronically filed the foregoing **DEFENDANT'S MOTION TO COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

    Thomas H. Mitchiner
    Mitchiner Law, LLC
    1888 North Sherman Street, Suite 200
    Denver, CO 80203
    720-538-0371
    Email: tmitchiner@mitchinerlawllc.com

    Steven Murray
    Murry Law, LLC
    1888 N. Sherman Street, Suite 200
    Denver, CO  80203
    303-396-9952
    Email: steven@smurraylaw.com

    ATTORNEYS FOR PLAINTIFF

    */s/ Barbara J. Esquibel*_____
    Barbara J. Esquibel, Paralegal